UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**VICTOR GONZALEZ,**

    Plaintiff

    v.                                Case No. 02-3270

**DR. FNU McINTYRE,
DR. FNU MATTICKS, and
JOHN CEARLOCK,**

    Defendants.

## Order

    The plaintiff, currently incarcerated at Pontiac Correctional Center, who brought his complaint against defendants Dr. McIntyre, Dr. Matticks and John Cearlock alleging deliberate indifference to his serious medical need for hernia surgery during his incarceration at Graham Correctional Center. The plaintiff has not served Dr. McIntyre. The court notes on September 10, 2004, the docket reflects that summons was returned unexecuted by the U.S. Marshal as to defendant Dr. McIntyre. Dr. Matticks was terminated as a defendant on June 22, 2004. Before the court is the defendant, Cearlock's unopposed summary judgment motion, d/e 60.

## Plaintiff's Allegations

    Dr. McIntyre diagnosed the plaintiff with two hernias in September, 2000, on his right side and navel. Dr. McIntyre admitted the plaintiff to the health care unit and told him surgery would be scheduled. On October 23, 2000, Dr. McIntyre told the plaintiff that he had forgotten to submit him for surgery, but that he would.

    On March 29, 2001, defendant Cearlock informed the plaintiff that Dr. McIntyre had lied and had never submitted the plaintiff for surgery. Cearlock claimed that this kind of behavior had caused Dr. McIntyre's departure from Graham. Cearlock then told the plaintiff of a new policy barring hernia surgery. Cearlock became angry when the plaintiff suggested he might have to contact an attorney. Cearlock told the plaintiff he could make things difficult for him.

    On April 2, 2001, Dr. Matticks confirmed the plaintiff's double hernia. He told the plaintiff that, due to the new policy, nothing could be done until the plaintiff's condition became an emergency.

    The plaintiff did receive surgery for his right-side hernia on April 30, 2002, from a Dr. Jacobs. He was supposed to return to Dr. Jacobs for a post-operative visit four weeks later. He

was also supposed to have a second surgery to correct the navel hernia six weeks after the first surgery. However, Dr. Matticks told the plaintiff in a suspicious tone, "I'll have to talk to (Dr. Jacobs) about that!" The plaintiff was never taken for his post-operative appointment, nor did he receive the second surgery. The plaintiff alleges that the defendants' deliberate indifference has caused him a substantial risk of serious harm. He seeks declaratory relief and damages.

### Plaintiff's Claims

The plaintiff's allegations against John Cearlock are threefold. First, the plaintiff alleges that Cearlock told him that Dr. McIntyre had lied to him about scheduling the surgery, and in fact, no surgery was scheduled. Second, the plaintiff alleges that Cearlock informed him of a new "policy" in place that hernia surgery was no longer provided. Finally, the plaintiff alleges that when he threatened to hire an attorney, Cearlock stated that "he could make things difficult for me." *See* complaint, para. 2.

### Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied,* 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

### Undisputed Facts

1.  The plaintiff was examined by physicians for his hernia and received treatment. *See* Defendant's Exhibit A; Affidavit of Cearlock, d/e 61.

2. Cearlock is not licensed or trained to either diagnose or prescribe medical treatment. *See* Id.

3. Cearlock's position as Health Care Unit Administrator is primarily administrative and not clinical. *See* Id.

4. Surgical intervention for an inmate must be prescribed by a physician and approved by the medical vendor. *See* Id.

5. If the vendor does not approve the surgery, the physician can appeal to the Agency Medical Director. *See* Id.

6. The physician recommending the surgery is responsible for making the referral to the vendor. *See* Id.

7. Dr. McIntyre examined the plaintiff on September 29, 2000, found the plaintiff to have a reducible right inguinal hernia and wrote in his note to recommend a referral. *See* Id; Defendant's Exhibit A, d/e 61.

8. There is no evidence in the medical record that the referral was ever made to the vendor. *See* Id.

9. The plaintiff was examined gain by Dr. McIntyre on October 23, 2000, at which time there was no notation of a recommendation for referral. *See* Id.

10. Dr. McIntyre's plan on October 21, 2000 was to continue plan of care, including a hernia belt. *See* Id.

11. Cearlock's first involvement in the plaintiff's care came on or bout March 25, 2001 when he was approached by the plaintiff with complaints about his care. *See* Affidavit of Cearlock, d/e 61.

12. On March 25, 2001, Cearlock reviewed the plaintiff's medical records and found no surgical referral had been made previously. *See* Affidavit of Cearlock; Defendant's Exhibit A, d/e 61.

13. Cearlock referred the plaintiff to Dr. Matticks, the medical director. *See* Id.

14. The plaintiff was examined by Dr. Matticks on April 2, 2001 as a result of Cearlock's referral. *See* Id.

15. Dr. Matticks discussed emergent versus elective surgery with the plaintiff on April 2, 2001 and no surgical recommendation was made. *See* Id.

16. The plaintiff was examined by the nurse practitioner on April 14, 2002, at which time the hernia was found to be unchanged. *See* Id.

17. On April 16, 2002, Cindy Hobrock of the Office of Health Services examined the plaintiff and then discussed the case with the Agency Medical Director, Dr. Elyea. *See* Id.

18. Dr. Elyea approved surgical intervention for the plaintiff's right inguinal hernia. *See* Id.

19. The plaintiff received surgical repair of his right inguinal hernia on April 30, 2002 by Dr. Jacobs. *See* Id.

20. The plaintiff's post operative course was uncomplicated. *See* Id.

21. Cearlock did not inform the plaintiff of any "policy" regarding the treatment of hernias. *See* Affidavit of Cearlock, d/e 61.

22. There was no written policy regarding the treatment of hernias, but it was the practice of the physicians and the vendors that reducible hernias were considered elective and not generally repaired surgically. *See* Id.

23. Cearlock is not a policy maker for either Health Professional's Limited (HPL) the medical vendor, or for the Illinois Department of Corrections and has made no policies for either of these entities. *See* Id.

24. The determination of what care is given to an inmate is made by physicians in conjunction with the medial vendor and the Agency Medical Director of the Illinois Department of Corrections. *See* Id.

25. Cearlock did not issue any threat to the plaintiff. *See* Id.

**Arguments**

The defendant Cearlock asserts that in light of the facts claimed to be undisputed, the plaintiff's case, alleging deliberate indifference, fails as a matter of law. Cearlock asserts that the plaintiff is unable to prove the requisite subjective component of *Estelle v. Gamble*, without which, it is impossible to show deliberate indifference.

**Discussion**

First, the plaintiff has not disputed Cearlock's assertion that he did not inform the plaintiff of any "policy" regarding the treatment of hernias. The plaintiff has not disputed Cearlock's assertion that there was no written policy regarding the treatment of hernias. The plaintiff has not disputed Cearlock's assertion that he is not a policy maker for either Health Professional's Limited the medical vendor, or for the Illinois Department of Corrections and has made no policies for either of these entities. Most important, the plaintiff's claim that Cearlock informed him of a

"policy" against performing hernia surgeries on inmates conflicts with reality. The plaintiff received surgery for a hernia in 2002. Furthermore, even if there had been such a policy, Cearlock was not alleged to have participated in making policy for the Department and he does not make such policy. Cearlock is granted summary judgment on the plaintiff's claim concerning the policy regarding the treatment of hernias.

Second, the plaintiff has not disputed Cearlock's assertion that he did not issue any threat to the plaintiff. Therefore, Cearlock is granted to summary judgment on this claim.

In *Estelle v. Gamble*, 429 U.S. 97 *(1976),* the Supreme Court held that in order to violate a prisoner's Eighth Amendment rights as they relate to medical care, an official must demonstrate deliberate indifference to the serious medical needs of that inmate, and concluded that "deliberate indifference to serious medical needs of prisoners" constitutes the "unnecessary and wanton infliction of pain," 429 U.S. 97, 104 (1976). However, the Court drew a distinction between an "Inadvertent failure to provide adequate medical care," *Estelle* at 105, and "an unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle* at 106.

"To raise an Eighth Amendment issue, 'the infliction [of punishment] must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable.'" *Snipes v. Detella*, 95.F.3d 586, 590, *citing Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1995). Furthermore, "mere negligence or even gross negligence does not constitute deliberate indifference." *Id.*, *citing Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Likewise, "medical decisions that may be characterized as 'classic example[sJ of matter[s] for medical judgment such as whether one course of treatment is preferable to another' are beyond the Amendment's purview." *Snipes v. Detella,* 95 F.3d 586, 591 (7th Cir. 1996)(emphasis added).

While the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody, with a medical care system that meets minimal standards of adequacy," *Meriwether v. Faulkner*, 821 F.2d 408, 411(7th Cir. 1987)), inmates are not entitled to unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes* at 592. Most important in this case, prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *See Bond v. Aguinaldo*, 288 F. Supp. 2d 918, 920 (7th Cir. 2002)("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.")(other citations omitted).

The plaintiff alleged that Cearlock, as Health Care Unit Administrator, was deliberately indifferent to his serious medical needs. Specific allegations against Cearlock are that Ceartock informed the plaintiff a physician who plaintiff alleged told him surgery was forthcoming had lied.

5

The plaintiff did not dispute, and the facts show that the plaintiff was provided with medical examinations and consultations.  He did not allege that Cearlock could, or should have, personally given him the actual medical care, which Cearlock is not licensed or trained to administer.  Likewise, the plaintiff did not allege that Cearlock in any way hindered his access to medical care.

The plaintiff was first seen by a physician, Dr. McEntyre, on September 29, 2000.  Dr. McIntyre examined the plaintiff and found the plaintiff to have a reducible right inguinal hernia and wrote in his note to recommend a referral.   However, it does not appear that any referral was ever made.  The responsibility for making the referrals to HPL was with the referring physician.  For some unknown reason, it does not appear that Dr. McEntyre followed through with his original plan to make a referral.

Cearlock became aware of the plaintiff's difficulties with his medical care on or about March 25, 2001, when the plaintiff approached him with complaints about his medical care.  At that time, Cearlock reviewed the plaintiff's medical record, including the note by Dr. McEntyre about the referral.  Cearlock noted that there was "no surgical referral on file to date." Cearlock referred the plaintiff to Dr. Matticks, the medical director.  The plaintiff was examined by Dr. Matticks on April 2, 2001, as a result of Cearlock's referral.  Dr. Matticks discussed emergent versus elective surgery with the plaintiff on April 2, 2001 and no surgical recommendation was made.  On April 14, 2002, the plaintiff was seen by the nurse practitioner for his hernia, but the hernia was found to be unchanged.  Cindy Hobrock of Office of Health Services examined Plaintiff and reviewed his records.   Ms. Hobrock notified the Agency Medical Director about the plaintiff's history and symptoms, and Dr. Elyea approved the plaintiff to be scheduled for surgery.  The surgery was ultimately performed on the right inguinal hernia.  No recommendation for surgery was made for the umbilical hernia.

The facts before this court do not give rise to an inference of deliberate indifference against Cearlock.  Therefore the court finds there is no basis to show that Cearlock was deliberately indifferent to the plaintiff's serious medical needs. When Cearlock became aware of the plaintiff's complaint in March of 2001, he reviewed the record and referred plaintiff to the physician. The physician did not recommend surgery at that time. The fact that an earlier physician either failed to follow through with a referral plan or decided it was not necessary cannot be attributed to Cearlock is not a licensed physician and was entitled to rely on the treating physicians' orders.  He could neither make his own referral for surgery or make a physician's referral for surgery.  The court agrees with the defendants' assertion that although the plaintiff did not like the information given to him by Cearlock, that no earlier referral was made, simply being the bearer of bad news is not a constitutional violation. Determining what treatment to prescribe is the job of the physicians hired by the Illinois Department of Corrections. Cearlock, as Health Care Unit Administrator, is not alleged, nor does he have the training or the license to overrule the diagnosis or treatment prescribed by licensed physicians.  Cearlock performed his job by addressing the plaintiff's complaints and referring the plaintiff to the person who could help him.  On that note, Cearlock is entitled to summary judgment in his favor.

**IT IS THEREFORE ORDERED:**

1. Pursuant to Fed. R Civ. P. Rule 56, the defendant Cearlock is entitled to summary judgment as a matter of law.  Therefore, Cearlock's summary judgment motion, d/e 60, is granted.

2. The clerk of the court is directed to enter summary judgment in favor of defendant Cearlock and against the plaintiff.

3. Within 14 days after the entry of this order, the plaintiff is ruled to show good cause why defendant McIntyre should not be dismissed for failure to timely serve him pursuant to Fed. R. Civ. Proc. 4(m).  The plaintiff is forewarned that if he fails to comply with this order within the specified time, his complaint against McIntyre will be summarily dismissed and his entire lawsuit will be terminated.

**Entered this 26th day of September 2005.**

s\Harold A. Baker

**HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE**